UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KAMRON FERREL,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

No. CV-09-0017-CI

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 13, 21.) Attorney Maureen J. Rosette represents Plaintiff; Special Assistant United States Attorney Lisa Goldoftas represents Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) After reviewing the administrative record and the briefs filed by the parties, Plaintiff's Motion for Summary Judgment is **DENIED** and entry of judgment for Defendant is directed.

On February 27, 2002, Plaintiff was determined disabled due to schizophrenia and entitled to disability insurance benefits (DIB) and supplemental security income (SSI) as of November 24, 1999. (Tr. 17, 62, 667B.) On February 13, 2005, the Social Security Administration determined that he was no longer disabled as of June 1, 2005. (Tr. 67, 72-74, 667B-667D.) The termination of his benefits was upheld on reconsideration, and Plaintiff requested a hearing before an administrative law judge (ALJ.) Hearings were held on April 24, 2007, and July 7, 2007, before ALJ R. J. Payne.

Medical expert Allen Bostwick, Ph.D., testified at the April hearing, and Plaintiff appeared with counsel and testified at the July hearing. The ALJ upheld the termination of benefits on November 29, 2007, and Plaintiff sought review by the Appeals Council. Review was denied by the Appeals Council. This appeal followed. Jurisdiction is appropriate pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

**CONTINUING DISABILITY REVIEW SEQUENTIAL PROCESS**

During a continuing disability review, the following sequential process is the analytical framework for determining whether benefits will continue: (1) Is the claimant engaging in substantial gainful activity? (2) If not, is there an impairment or combination of impairments that meets or equals the severity of a listed

impairment? (3) If there is no such impairment, has there been medical improvement? (4) If there has been medical improvement, is it related to ability to do work, *i.e.,* has there been an increase in the residual functional capacity based on the impairment that was present at the time of the most recent favorable medical determination? (5) If there has been no medical improvement or the medical improvement is not related to an ability to work, then the ALJ must examine the exceptions found in paragraphs(d) and (e) of § 404.1594;[1] (6) If medical improvement is related to ability to do work or if one of the exceptions in paragraph (d) applies, then the ALJ must determine whether all current impairments in combination are severe; (7) If severe impairments are found, then a determination will be made whether the claimant can perform past relevant work; (8) If unable to perform past relevant work, then a determination will be made whether, given the residual functional capacity assessment and considering age, education and past work experience, other work can be performed. *See* 20 C.F.R. § 404.1594(f) (explaining the eight-step analytical framework for determining whether a claimant's disability should be terminated). Where, as here, SSI benefits are at issue, the first step above is

---

[1] Those exceptions under section (d) include advances in medical or vocational therapy or technology, new or improved diagnostic or evaluative techniques indicating the impairment is not as disabling as once thought, or the prior decision was in error, the claimant is engaging in SGA. Under section (e), the exceptions include evidence of fraud in obtaining benefits, failure to follow prescribed treatment.

omitted and the process involves only seven steps. 20 C.F.R. § 416.994(b)(5)(i)-(vii). For ease of discussion in this decision, the steps will be discussed together under the eight-step disability process.

**STATEMENT OF THE FACTS**

At the time of the administrative hearing in July 2007, Plaintiff was 28 years old. (Tr. 685.) He had a high-school diploma and had attended classes at Spokane Community College, but did not obtain a degree. (Tr. 686, 712.) Plaintiff had past work experience as mechanic helper, courtesy clerk, newspaper delivery person and fruit packer. (Tr. 190.) He had a history of substance abuse and treatment. Plaintiff was incarcerated several times for drug-related convictions, probation violations, as well as robbery. (Tr. 532, 707-10.) At the time of the hearing, he was serving a sentence for robbery and identity theft. (Tr. 694.) Plaintiff reported he was unable to work due to anxiety and inability to focus or concentrate. (Tr. 687-88.)

**ADMINISTRATIVE DECISION**

The ALJ found Plaintiff had not been engaged in substantial gainful activity since June 1, 2005. (Tr. 19.) He found since that date, Plaintiff's impairments alone or in combination did not meet or equal the severity requirements of the Listings. (*Id*.) The ALJ then found medical improvement had occurred as of June 1, 2005 (Tr. 20) and the improvement was related to Plaintiff's ability to work. (Tr. 26.) The ALJ then found Plaintiff's current impairments of major depressive disorder and antisocial personality disorder continued to be severe, but found Plaintiff's allegations regarding the severity of his impairments and limitations were not credible.

(Tr. 26, 28-29.) He determined that as of June 1, 2005, Plaintiff had the residual functional capacity (RFC) to perform "the full range of heavy work except he has moderate limitations in his ability to interact appropriately with the general public." (Tr. 26.) Based on this RFC, the ALJ found Plaintiff could not perform his past relevant work. (Tr. 30.) Taking judicial notice of prior vocational expert testimony, the ALJ found Plaintiff's non-exertional limitations "would have little or no effect on the occupational base" of sedentary, light, medium and heavy work. (Tr. 31.) The ALJ considered the Medical-Vocational Guidelines and found there are other jobs in the national economy Plaintiff could perform at the medium level. The ALJ concluded Plaintiff had not become disabled again since his disability ended on June 1, 2005. (Tr. 31.)

## ISSUES

The question presented is whether there is substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff asserts the ALJ erred when he (1) improperly rejected the opinions of his treating psychologists and mental health providers; (2) relied on the testimony of a non-examining medical expert; (3) failed to consider properly the opinions of reviewing agency psychologists; (4) improperly assessed his RFC; and (5) improperly rejected lay witness testimony.

## DISCUSSION

### A. Evaluation of the Medical Evidence

The Regulations distinguish among the opinions of three types of "acceptable medical sources:" (1) sources who have treated the

claimant; (2) sources who have examined the claimant; and (3) sources who have neither examined nor treated the claimant, but express their opinion based upon a review of the claimant's medical records. 20 C.F.R. §§ 404.1527, 416.927. Acceptable medical sources include licensed or certified psychologists, as well as licensed medical and osteopathic doctors. 20 C.F.R. §§ 404.1513, 416.913. A treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining reviewing or consulting physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

A treating physician's opinion is given special weight because he is employed to cure and has a greater opportunity to observe the claimant's physical condition. *Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). If the treating physician's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons. *Lester*, 81 F.3d at 830. If contradicted, treating physician opinions may be rejected if the ALJ states specific, legitimate reasons that are supported by substantial evidence. *Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair*, 885 F.2d at 605. The same standard is applied to the rejection of the opinions of examining physicians. *Lester*, 81 F.3d at 830.

**1. Treating and Examining Medical Sources**

The record establishes that Dr. Goodwin was Plaintiff's treating psychologist between June 2000 and May 2002. (Tr. 346-78, 474.) In May 2002, he opined Plaintiff suffered from a schizophreniform disorder or schizoaffective disorder, exacerbated by cannabis abuse. (Tr. 474.) There are no other treatment records

from Dr. Goodwin after November 2001. (Tr. 376.) However, the record shows that on August 17, 2006, Dr. Goodwin re-evaluated Plaintiff, and identified the "primary presenting problem reported" as "major depressive disorder, recurrent, severe with psychotic features in partial remission; polysubstance dependence early remission x 1 mo.; and a rule/out bipolar I unspecified." (Tr. 475-76, 482.) The narrative report indicates Dr. Goodwin conducted a mini-mental status examination; he also completed a psychological evaluation form in which he assessed marked cognitive functioning limitations and marked and severe social functional limitations. (Tr. 483.) He noted alcohol and drug abuse significantly exacerbate Plaintiff's mental condition. (*Id.*)

Plaintiff argues the ALJ did not give legally sufficient reasons for rejecting the limitations assessed by Dr. Goodwin, as a treating physician, in the 2006 report. (Ct. Rec. 14 at 12.) Plaintiff's argument fails for two reasons. First, the record does not establish that Dr. Goodwin had a treating relationship with Plaintiff between 2002 and 2006. Dr. Goodwin's narrative report does not reference ongoing treatment or observations other than those during the one-time interview and mini-mental status examination. (Tr. 475-76.) Second, the ALJ gave specific and legitimate reasons for rejecting the severity of limitations assessed by Dr. Goodwin (whose opinions are contradicted by other acceptable medical sources) in the form evaluation report. (Tr. 26, 29-30.)

An ALJ is not obliged to recite the specific words of rejection where, as here, a court can read from the ALJ's summary of the evidence and draw inferences relative to Dr. Goodwin's findings.

*Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). In his summary of Dr. Bostwick's testimony, the ALJ discussed conflicting medical opinions of record and adopted Dr. Bostwick's testimony and opinions, finding they were consistent with and supported by the other evidence in the record. (Tr. 22-26, 29-30.) The ALJ agreed with Dr. Bostwick that the diagnoses given in 2006 by Dr. Goodwin could not produce the severe limitations assessed in the form report. (Tr. 26.)

The ALJ's findings are supported by Dr. Goodwin's own narrative report, in which he noted appropriate interactions, unimpaired level of consciousness, intact memory, no evidence of phobia, some hyperactivity, limited impulse control and poor judgment, with an overall impression within normal limits. (Tr. 475.) Dr. Goodwin also opined substance abuse exacerbated the mental problems and alcohol/drug treatment would decrease the severity of symptoms. (Tr. 482-83.)

The ALJ's discussion of conflicting opinions from Mark Chalem, M.D., Dr. Bostwick and mental health providers support the inference that the limitations assessed by Dr. Goodwin are not supported by the other medical evidence relating to the relevant time. *See Tommasetti v. Astrue,* 533 F.3d 1035, 1041-42 (9th Cir. 2008). Specifically, the ALJ detailed findings by Mark Chalem, M.D., examining psychiatrist at Pioneer Center East in Wenatchee, and treatment providers at Catholic Family Services and Chelan-Douglas Behavioral Health Clinic (BHC), who treated Plaintiff between 2004 and 2007. (Tr. 23, 532-40, 608-28, 620-22.)

On June 15, 2005, Dr. Chalem examined Plaintiff, who was referred by the jail for substance abuse treatment. Plaintiff

reported his last use was on May 5, 2005. (Tr. 532.) During the mental status examination, Dr. Chalem observed Plaintiff's affect was in the normal range and appropriate to mood; he also reported Plaintiff tested within normal ranges in objective psychological testing (Trails A and B), exhibited no cognitive problems, mild depressive symptoms, and no more than slight impairment in social functioning. (Tr. 23, 534-35.) Plaintiff reported he needed to get involved in work and agreed he needed to resume AA and NA programs. (Tr. 533.) Dr. Chalem diagnosed anxiety disorder, NOS, and depression NOS in remission; methamphetamine, cannabis and alcohol abuse; and partial antisocial traits due to his criminal history after he started using drugs. (Tr. 534.) He added a diagnosis of psychosis, NOS, on June 29, 2006, after reviewing mental health records from BHC, dated May 2004 through June 2005. (Tr. 538.)

In July 2005, Plaintiff requested a follow-up appointment with Dr. Chalem. (Tr. 539-40.) Dr. Chalem noted that Plaintiff reported experiencing paranoia symptoms only when abusing drugs. He reported that "charting here suggests that he is very cooperative and positive, with no evidence of mood or thought disorder or anxiety." (Tr. 539.) Dr. Chalem also observed Plaintiff to be "euthymic [non-depressed] and totally appropriate." (*Id.*) He expressed doubt as to Plaintiff's need for anti-psychotic medication, noting that based on the medical records, Plaintiff was put on medication when he was abusing drugs and suffering substance induced psychosis. Dr. Chalem speculated his medical providers left him on medication because he "might get worse off of it." (*Id.*) Nonetheless, Dr. Chalem

deferred to BHC for medication management.[2] He recommended Plaintiff get aerobic exercise and avoid sweets and carbohydrates. (Tr. 540.) In December 2005, Plaintiff successfully completed intensive outpatient/substance abuse treatment. (Tr. 541-65.)

The ALJ's summary of Catholic Family Services records further supports the ALJ's rejection of Dr. Goodwin's severity ratings. Plaintiff was seen for a medication evaluation by Kathy Hevly, A.R.N.P., on May 16, 2007. (Tr. 620-21.) Plaintiff complained of an inability to focus, concentrate or stay organized. Based on his self-report and her observations, Ms. Hevly determined Plaintiff met the criteria for attention deficit hyperactivity disorder (ADHD) and prescribed Strattera. At the first appointment, she noted Plaintiff was "quite disruptive" and unable to sustain attention. (Tr. 621.) In a follow-up evaluation on May 22, 2007, after Plaintiff had been on the ADHD medication for less than a week, Ms. Hevly observed him as on time, calm, cooperative, cordial, with no abnormal or unusual movements and coherent, well organized thought processes. On mental status examination, she noted a euthymic mood, with appropriate affect, intact memory and stable. (Tr. 625.) At this evaluation, Plaintiff reported cannabis and alcohol use within the last four weeks. (Tr. 623-24; *see also* Tr. 697.) It is also noted on independent review that, consistent with Ms. Hevly's observations, Plaintiff testified his medication helps him focus. (Tr. 689.)

The record in its entirety, and inferences drawn, support the

---

[2] It was noted by Dr. Chalem that BHC was Plaintiff's long term mental health provider, had known him over time and had access to his hospital records. (Tr. 539.)

ALJ's findings and his rejection of Dr. Goodwin's conclusory, unexplained assessment of marked and severe functional limitations.

**2. Non-Examining Medical Sources**

Plaintiff contends the ALJ's adoption of Dr. Bostwick's testimony was error because Dr. Bostwick was a non-examining psychologist. (Ct. Rec. 14 at 11.) However, it is well-settled that the opinion of a non-examining medical expert may be accepted as substantial evidence if it is supported by and consistent with other evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). Further, courts have upheld an ALJ's decision to reject the opinion of an examining physician based in part on the testimony of a non-examining medical advisor. *Lester*, 81 F.3d at 831. The analysis and opinion of an expert selected by an ALJ may be helpful in his adjudication, and may serve as substantial evidence when supported by and consistent with other evidence in the record. Where evidence reasonably supports the ALJ's determinations regarding conflicts in medical evidence, the court should not second guess the ALJ's resolution of conflicting medical testimony. *Id.; Andrews,* 53 F.3d at 1041.

As discussed above, Dr. Bostwick's analysis of the medical record and resulting opinions regarding Plaintiff's diagnoses and limitations are supported amply by reports from other acceptable medical sources and treatment providers, as well as Plaintiff's own testimony, all of which are identified by the ALJ in his decision. The ALJ gave specific, legitimate reasons for rejecting Dr. Goodwin's unexplained opinions in favor of Dr. Bostwick's testimony, which was based on a review of the entire record. Therefore, the

ALJ did not err in his reliance on Dr. Bostwick's testimony.

Plaintiff also argues the ALJ did not properly consider or reject the opinions of non-examining agency psychologists Edward Beaty, Ph.D., and Mary Gentile, Ph.D. (Ct. Rec. 14 at 11-12.) "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of medical issues in disability claims under the Social Security Act." *Social Security Regulation* (*SSR*) 96-6p.[3] Agency physicians are treated as expert opinion evidence of nonexamining sources by the ALJ, who can give weight to these opinions if they are supported by other evidence in the record. *Id*.

Dr. Beaty rendered an opinion that Plaintiff met Listing 12.03(C), on February 25, 2002 (Tr. 391); Dr. Gentile assessed several moderate work-related limitations in October 2004. (Tr. 440-41.) It is undisputed that Plaintiff was determined disabled between November 24, 1999, and June 1, 2005 (Tr. 17); the issue before the court is whether Plaintiff's disability continued after June 1, 2005. Because the opinions of Drs. Beaty and Gentile are not probative to the existence of disabling symptoms after June 2005, the ALJ was not required to consider or reject them in his 2007 decision.

---

[3] Social Security Rulings are issued to clarify the Commissioner's regulations and policy. They are not published in the federal register and do not have the force of law. However, "deference" is given to the Commissioner's interpretation of its regulations. *Ukolov v. Barnhart*, 420 F.3d 1002 n.2 (9th Cir. 2005); *Bunnell v. Sullivan*, 947 F.2d 341 n.3 (9th Cir. 1991).

**B. "Other Source" Opinions**

In addition to the opinions of acceptable medical sources, the record includes evidence from mental health professionals and a written statement from Plaintiff's mother and sister. The opinions of health providers who do not qualify as "acceptable medical sources" and non-medical sources such as friends and relatives are considered "other source" opinions under the Regulations. 20 C.F.R. §§ 404.1513(d), 416.913(d). Unlike the opinions of acceptable medical sources, "other source" opinions cannot establish a diagnoses or disability. Agency regulations require that opinions of acceptable medical sources be given more weight than those of "other sources." 20 C.F.R. §§ 404.1513, 416.913; *Gomez v. Chater,* 74 F.3d 967, 970-71 (9th Cir. 1996). However, "other source" opinions regarding how an impairment affects an individual's ability to do work activities must be considered by the ALJ. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). If the ALJ rejects an "other source" opinion, he must give specific reasons "germane" to lay witness for doing so. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993).

As explained in the Commissioner's policy ruling, the distinction between medical providers who are "acceptable medical sources" and health care providers who do not fall under that definition is necessary because only an acceptable medical source can (1) establish the existence of a medically determinable impairment, (2) give medical opinions, and (3) be considered a "treating source," whose opinions may be entitled to controlling weight. *SSR* 06-03p.

The Commissioner also identified certain factors that should be considered by the adjudicator in evaluating opinions of non-medical sources and health care providers who are not "acceptable medical sources," including: the nature and extent of the relationship; whether the evidence is consistent with other evidence; the degree to which the source presents relevant evidence to support an opinion; and whether the source has a speciality or area of expertise related to the individual's impairment; and other factors that tend to support or refute the opinion. *Id.*

**1. Mental Health Professionals**

Plaintiff asserts the ALJ did not properly consider the opinions of Tina Thornton, B.A., from BHC, Kathy Hevly, A.R.N.P., at Catholic Family Services, and Mike Magnotti, M.A., M.H.P. He argues these unrejected opinions should be credited, requiring reversal of the Commissioner's decision. (Ct. Rec. 14 at 14.) Plaintiff's argument fails. Mr. Magnotti's evaluation, dated December 20, 2006, was submitted to the Appeals Council, and was not reviewed by the ALJ. (Tr. 6, 672-76.) Although Mr. Magnotti's report was considered by the Appeals Council and, thus, is a part of the record on review by this court, remand for review of new evidence by the ALJ is warranted only if there is a reasonable possibility that the new evidence would change the outcome of the case. That is not the case here.

An ALJ has no obligation to consider conclusory, unexplained opinions. *See, e.g., Thomas v. Barnhart*, 278 F.3d at 957. Here, the new evidence does not include progress notes or narrative reports to indicate the length or nature of Mr. Magnotti's relationship with Plaintiff. The marked and severe limitations

assessed on his form report are unexplained and unsupported by clinic notes or Mr. Magnotti's own mini-mental state examination results, in which Plaintiff scored the highest score possible. (Tr. 676.)

Evidence from Ms. Thornton, case manager at BHC, consists of two letters, which include identical information. (Tr. 472, 473.) The letters, dated April 13, 2005, and May 18, 2005, appear to summarize treatment notes contained in the record and fully discussed by the ALJ. (Tr. 21-23, 442-71.) It is also noted on independent review that BHC records include a note from Dr. E. Gonzales, M.D. indicating that on March 8, 2005, Plaintiff's mother requested a "letter documenting diagnoses of 'paranoid schizophrenia and depression'. . . re possibility of denial of benefits for SSI." (Tr. 471.) Dr. Gonzales specifically noted these diagnoses were not listed in Plaintiff's case. A follow-up note indicates Dr. Gonzales did not agree to write the letter, but Ms. Thornton agreed to keep Plaintiff's case open. (*Id*.) The only opinion Ms. Thornton offers in her letters is that Plaintiff "would be a good candidate for SSI due to the fact that the stress of employment may ultimately lead to drug use and non-compliance with our agency." Because Ms. Thornton's opinion is conclusory, speculative, and of little value in assessing Plaintiff's ability to perform work-related activities, the ALJ was not required to explain the weight given. *SSR* 06-03p (explanation required only "when such opinions may have an effect on outcome of case").

Ms. Hevly's opinions were summarized in the ALJ's decision. (Tr. 25, 621.) Ms. Hevly is not qualified to give a diagnosis, 20 C.F.R. § 404.1513(a), 416.913(a), and she did not assess functional

limitations. As discussed above, Plaintiff was seen by Ms. Hevly for medication evaluation. Ms. Hevly observed a drastic change in Plaintiff's presentation after 5 days of prescribed medication, noting that Plaintiff was calm, cooperative with no abnormal movements and appropriate affect. (Tr. 625.) Her observations and reports, viewed in their entirety, support the ALJ's determination; therefore the ALJ was not required to reject them.

**2. Non-Medical, Lay Witness Opinions**

As is the case with medical "other source" opinions, non-medical source, or lay witness, opinions must be considered by the ALJ. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). Plaintiff argues the ALJ did not allow his mother, Susan Ferrel, to testify at the hearing, and he did not properly reject the written statement she presented in lieu of oral testimony. (Ct. Rec. 14 at 16.) The record shows that the ALJ noted Plaintiff's mother was at the hearing to present evidence (Tr. 685), and at the end of the hearing, specifically requested an affidavit from Plaintiff's mother, in addition to other records. (Tr. 713.) Neither Plaintiff's representative nor Plaintiff objected to this request. The record includes Mrs. Ferrel's written statement that was considered by the ALJ and is part of the record on review. (Tr. 307-15.) The ALJ properly exercised his authority to decide when evidence will be presented. 20. C.F.R. § 404.944. His request for an affidavit in lieu of testimony is not error. *Greger v. Barnhart*, 464 F.3d 968, 972-73 (9th Cir. 2006.)

Plaintiff's argument that the ALJ erred in his consideration of Mrs. Ferrel's evidence is unpersuasive. The ALJ may reject or discount symptoms described by non-medical sources with specific

reasons "germane" to the witnesses. *Nguyen*, 100 F.3d at 1467. Here, the ALJ specifically noted Mrs. Ferrel's and Plaintiff's sister's statements describing Plaintiff's mental impairments. (Tr. 30.) He correctly found these statements could not establish disability. *SSR* 06-03p (only acceptable medical sources can establish medically determinable impairments). In addition, he noted their close relationship with Plaintiff and desire to help him would possibly affect the impartiality of their opinion. While standing alone, this reason would be unhelpful, this is an appropriate factor to consider provided there are other factors to review. *Id*. (nature of non-medical source's relationship with claimant is factor to consider). The ALJ also found the limitations they described were not consistent with Plaintiff's reported activities and the observations and opinions of medical doctors. (Tr. 30.) These are specific reasons, germane to Plaintiff's relatives. *See Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685 (9th Cir. 2009); *Greger*, 464 F.3d at 972; *SSR* 06-03p.

The ALJ's reasoning is supported by Plaintiff's own testimony that he did his own household chores, kept his house tidy, shopped, cooked, rode his bike, hiked and fished, read, was a member of several community organizations, had a close family relationship and engaged in a variety of social activities. (Tr. 692-93, 698, 702, 799-11.) It is noted on independent review that Plaintiff was capable of attending Community College and was in Spanish Club, activities which required concentration, memory, and persistence. He testified at the July hearing that the new medication he was receiving for attention deficient problems was working and very helpful in making him more focused. (Tr. 690.) He also stated he

could manage to work an eight hour day if the work is "not too hard." (Tr. 703.) The ALJ's reasons for giving Ms. Ferrel's statement little weight in his assessment of the severity of Plaintiff's limitations are legally sufficient.

**C. RFC Assessment**

It is well-settled that the ALJ is "responsible for determining credibility, resolving conflicts in medical testimony and for resolving ambiguities," in these proceedings. *Richardson,* 402 U.S. at 400; *Andrews*, 53 F.3d at 1039; *SSR* 96-8p. The final determination regarding a claimant's ability to perform basic work is the sole responsibility of the Commissioner. 20 C.F.R. §§ 404.1546, 416.946; *SSR* 96-5p (RFC assessment is an administrative finding of fact reserved to the Commissioner). No special significance is given to a medical source opinion on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e).

Because ALJ Payne did not err in his evaluation of the medical evidence and "other source" opinions, and his findings are a rational interpretation of the entire record, his RFC determination is not based on legal error. His determination that Plaintiff's medical condition has improved, and Plaintiff has the functional ability to do all exertional level work activities with moderate limitations in his ability to interact with the general public is supported by the evidence in its entirety, as well as Plaintiff's credible testimony. Where the Commissioner's determination is a rational interpretation of the evidence, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097. Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13)** is **DENIED;**

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 21**) is **GRANTED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. The file shall be **CLOSED** and judgment entered for Defendant.

DATED October 16, 2009.

S/ CYNTHIA IMBROGNO
UNITED STATES MAGISTRATE JUDGE